IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) MERRILL CHANCE,<br><br>      Plaintiff,<br><br>vs.<br><br>(1) RYAN ZINKE, in his official capacity as Secretary of the United States Department of the Interior; (2) UNITED STATES BUREAU OF INDIAN AFFAIRS, an agency within the United States Department of the Interior; (3) WELDON LOUDERMILK, in his official capacity as Director of the United States Bureau of Indian Affairs; and (4) GREAT SOUTHWESTERN EXPLORATION, INC., an Oklahoma Corporation,<br><br>      Defendants. | Case No. 16-CV-549-JHP-PJC |

**OPINION AND ORDER**

Now before the Court are a motion to dismiss (Dkt.# 25) of Ryan Zinke, in his official capacity as Secretary of the United States Department of the Interior ("Interior"); the United States Bureau of Indian Affairs ("BIA"); and Weldon Loudermilk, in his official capacity as Director of the BIA ("Federal Defendants"),[1] and a motion to dismiss (Dkt.# 21) filed by Great Southwestern Exploration, Inc. ("GSE"). Federal Defendants ask the Court to dismiss Plaintiff's amended complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction ( Dkt.# 25). GSE moves to dismiss Plaintiff's amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted (Dkt.# 21).

**BACKGROUND**

---

[1] Ryan Zinke is now the Secretary of the Department of the Interior and Weldon Loudermilk is now the Director of the BIA. Under Federal Rule of Civil Procedure 25(d), Zinke and Loudermilk are automatically substituted as the Federal Defendants.

This case arises from the BIA's approval of a lease assignment and two drilling permits on the subsurface mineral estate underlying Plaintiff's lands. Plaintiff is the owner of surface land in Osage County, Oklahoma located in the Eastern half (E/2) of the Southeast Quarter (SE/4) of Section 1, Township 25 North, Range 3 East (Dkt.# 17 at ¶ 2). Pursuant to the Osage Allotment Act, the subsurface mineral estate in Osage County ("Osage Mineral Estate") is held in trust by the United States on behalf of the Osage Nation. Act of June 28, 1906, Pub. L. No. 59-321, § 3, 34 Stat. 539, 543-44, as amended ("1906 Act"); *see also Osage Nation v. Irby*, 597 F.3d 1117, 1120-21 (10th Cir. 2010). Under the 1906 Act, the Osage Nation is authorized to lease the Osage Mineral Estate for oil and gas exploration and development "with the approval of the Secretary of the Interior, and under such rules and regulations as he may prescribe." 1906 Act § 3. The Secretary has delegated this authority to the Superintendent of the Osage Agency. *See* 25 C.F.R §§ 226.4, 226.5(b); *see also* 209 DM 8.1(A). The regulations governing leasing of the Osage Mineral Estate for oil and gas mining are set forth in 25 C.F.R. Part 226.[2]

The Superintendent of the Osage Agency is authorized to approve oil and gas leases made by the Osage Minerals Council involving the Osage Mineral Estate. *See* 25 C.F.R. § 226.2. Upon receipt of an approved lease, lessees have the right to use so much of the surface of the land within the Osage Mineral Estate as may be reasonable for operations and marketing. 25 C.F.R. § 226.19(a). However, except for the surveying and staking of a well, no operations of any kind shall commence until the lessee meets with the surface owner to discuss lease access and the settlement of surface damages. 25 C.F.R. § 226.18. Prior to commencing drilling operations on a leased tract, a lessee must submit an application for a permit to drill ("APD"),

---

[2] From 1957 until 1982, the regulations governing the leasing of the Osage Mineral Estate were codified at 25 C.F.R. Part 183. In 1982, the regulations were re-designated as 25 C.F.R. Part 226. *See* 47 Fed. Reg. 13327 (Mar. 30, 1982).

obtain the Superintendent's approval thereof, *Id.* at § 226.16(b), and pay the surface owner a commencement fee, *Id.* at § 226.18(b). In accordance with the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. § 4321, *et seq.,* each oil and/or gas lease and the associated activities and installations subject to the regulations in 25 C.F.R. Part 226 must be assessed for its environmental affects prior to approval by the Superintendent. 25 C.F.R. § 226.2©; *Davis v. Morton,* 469 F.2d 593, 596-97 (10th Cir. 1972).

On April 23, 1963, the Osage Tribe and Eason Oil Company ("Eason") entered into an oil lease for the SE/4 of Section 1, Township 25 North, Range 3 East, Contract No. 14-20-406-1354 ("Chance Lease") (Dkt.# 17 at ¶ 45; Dkt.# 17-3). The Superintendent of the BIA Osage Agency ("Superintendent") approved the Chance Lease on June 3, 1963. *Id.* The Chance Lease was subsequently assigned and as of August 31, 1990, Buck Creek Associates held 100% right, title and interest therein. On February 25, 1991, Buck Creek Associates assigned the Chance Lease to GSE (Dkt.# 17 at ¶ 51; Dkt.# 17-3). The Superintendent approved the assignment from Buck Creek Associates to its affiliate, GSE on April 23, 1991. *Id.* Plaintiff asserts that the BIA violated NEPA by failing to conduct an environmental analysis prior to approval of the Chance Lease assignment to GSE ( Dkt.# 17 at ¶¶ 51-52).

On December 3, 1990, the BIA approved an APD submitted by Buck Creek Associates for Well No. 3 on the Chance Lease ( Dkt.# 17 at ¶ 48). Buck Creek Associates began drilling Well No. 3 on December 24, 1990, and finished drilling on January 8, 1991. *Id.* at ¶ 50; Dkt.# 17-1). On June 21, 1991, the BIA approved an APD submitted by Buck Creek Associates for Well No. 4 on the Chance Lease (Dkt.# 17 at ¶ 54; Dkt.# 17-4). Buck Creek Associates began drilling Well No. 4 on June 20, 1991, and finished drilling on July 1, 1991. *Id.* Plaintiff asserts that the BIA failed to comply with NEPA in its approval of the APDs for Wells No. 3 and 4, and

that the BIA failed to provide Plaintiff or his predecessors-in-interest with notice that the APDs for either well had been approved ( Dkt.# 17 at ¶¶ 48, 54). Plaintiff alleges that GSE drilled Wells No. 3 and 4 and constructed oil and gas related facilities on Plaintiff's property. *Id.* at ¶¶ 50, 54. Plaintiff asserts that GSE's actions caused significant erosion and other environmental damage. *Id.* Plaintiff also alleges that the BIA has approved other unspecified or unknown "oil and gas related activity" on Plaintiff's property in violation of NEPA and without notice to Plaintiff or his predecessors-in-interest. *Id.* at ¶ 60.

On August 19, 2016, Plaintiff brought this suit against the Federal Defendants and GSE (Dkt.# 1). Plaintiff filed an amended complaint on October 26, 2016 (Dkt.# 17). Plaintiff brings his claims against the Federal Defendants under the Administrative Procedure Act, 5 U.S.C. § 551, *et seq.* ("APA"). Plaintiff asks that the Court enter declaratory judgment finding that the Superintendent's approval of the Chance Lease assignment and APDs for Wells No. 3 and 4 violated NEPA and are therefore invalid (Dkt.# 17 at ¶¶ 67, 77, 87). Plaintiff also asks that the Court enter declaratory judgment finding that the Superintendent's approval of any unknown leases, drilling or workover permits since January 1, 1970, violated NEPA and are *void ab initio*. *Id.* at ¶ 96. In addition to the foregoing, Plaintiff also asserts that GSE's entry onto his property constitutes trespass because GSE's lease and drilling permits are inoperative, and asks the Court to enjoin GSE from entry upon his land without a valid oil and gas lease or permit. *Id.* at ¶ 106. Finally, Plaintiff alleges that he is entitled to rent payments under Oklahoma law for GSE's occupation of his land for the six years preceding the filing of the complaint. *Id.* at ¶¶ 108-110. The Federal Defendants now move for dismissal of Plaintiff's claims against them for lack of subject matter jurisdiction, Dkt.#25 at 1, and GSE moves for dismissal for failure to state a claim upon which relief may be granted on the claims against it, Dkt.# 21 at 1.

# THE MOTIONS TO DISMISS

I. **Motion of Federal Defendants**

Federal Defendants argue that Plaintiff's claims are barred by the statute of limitations, that Plaintiff has failed to establish a waiver of sovereign immunity, that Plaintiff has failed to exhaust his administrative remedies, that Plaintiff has failed to identify any final agency action with respect to his claim regarding unknown leases and permits, and that Plaintiff's claims are moot ( Dkt.# 25).

"Federal courts are courts of limited jurisdiction . . . , possessing only that power that [is] authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). When considering a motion under Fed. R. Civ. P. 12(b)(1), the burden of establishing the court's subject-matter jurisdiction resides with the party seeking to invoke it, and that party has the burden of establishing jurisdiction by a preponderance of the evidence. *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936). Federal subject-matter jurisdiction "cannot be consented to or waived, and its presence must be established in every cause under review in the federal courts." *Firstenberg v. City of Santa Fe, N.M.*, 696 F.3d 1018, 1022 (10th Cir. 2012). If the Court, at any time, determines that it lacks subject-matter jurisdiction, the case should be dismissed. Fed. R. Civ. P. 12(h)(3).

Rule 12(b)(1) motions can take one of two forms: "(1) a facial attack on the sufficiency of the complaint's allegations as to subject-matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). Federal Defendants' motion presents both a facial attack and a factual attack.

    A. **Plaintiff's claims are barred by the six-year statute of limitations set forth in 28 U.S.C. § 2401(a)**

### 1. Plaintiff's challenges to the lease and two drilling permits are untimely

"[E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). Claims brought pursuant to the APA, such as Plaintiff's claims in the instant case, are subject to the six-year statute of limitations period set forth in 28 U.S.C. § 2401(a). *Impact Energy Res., LLC v. Salazar*, 693 F.3d 1239, 1245-46 (10th Cir. 2012); *Nagahi v. Immigration & Naturalization Serv.*, 219 F.3d 1166, 1171 (10th Cir. 2000). "Unlike an ordinary statute of limitations, [28 U.S.C.] § 2401(a) is a jurisdictional condition attached to the government's waiver of sovereign immunity . . . ." *Spannus v. U.S. Dep't of Justice*, 824 F.2d 52, 55 (D.C. Cir. 1987); *see also Ute Distrib. Corp. v. Sec'y of Interior*, 584 F.3d 1275, 1282 (10th Cir. 2009), *cert. denied*, 560 U.S. 905 (2010) (suggesting that section 2401(a) is jurisdictional).

Determination of the accrual date of an action is critical for purposes of applying 28 U.S.C. § 2401(a). *Id.* "A claim against the United States first accrues on the date when all events have occurred which fix the liability of the Government and entitle the claimant to institute an action." *Wild Horse Observers Ass'n, Inc. v. Jewell*, 550 F. Appx. 638, 641 (10th Cir. 2012) (citing *Ute Distrib. Corp.*, 584 F.3d at 1282); *see also Phillips Petroleum Co. v. Lujan*, 4 F.3d 858, 861 (10th Cir. 1993). A plaintiff need not know the full extent of his injuries before the statute of limitations begins to run. *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994). "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Id.*

Plaintiff filed the present case challenging the Superintendent's approval of the Chance Lease assignment and two drilling permits on August 19, 2016. The oil lease assignment was approved on April 23, 1991 (Dkt.# 17-3). The drilling permit for Well 3 was approved on

December 30, 1990 (Dkt.# 17-1). The drilling permit for Well 4 was approved on June 21, 1991 (Dkt.# 17-4). The subject lease assignment and drilling permits have been available, upon request, at the Osage Agency since the dates they were approved (Dkt.# 25 at 6). Further, prior to commencement of drilling operations on any lease, the lessee is required to meet with the surface owner to discuss well location, routes of ingress/egress, and the procedure for settlement of surface damages. 25 C.F.R. § 226.18. Lessees are also required to pay a commencement fee to the surface owner for each well, prior to the well being drilled. 25 C.F.R. § 226.19(b). GSE has submitted a sworn statement that it negotiated commencement payments with the surface owners at the time, Plaintiff's parents, and that its presence on the Chance Lease was open and notorious (Dkt.# 21 at 6-9).

The Court finds that Plaintiff, through reasonable diligence, could have learned of the existence of the subject lease and drilling permits at any time following their submission by the lessee simply by contacting the Osage Agency. As noted above, Plaintiff, through his predecessor in interest, had actual notice that the Osage Agency had approved a lease and drilling permits affecting the property as evidenced by the interaction between GSE and the predecessors and the acceptance and deposit of commencement fees in relation thereto. *See* Dkt.#s 17-1; 17-4. Accordingly, the Court finds that any suit under the APA relating to the approval and issuance of these documents is barred by the statute of limitations. *See*, *e.g.*, *Chemical Weapons Working Group, Inc., v. U.S. Dep't of the Army*, 111 F.3d 1485, 1494 (10th Cir. 1997).

**2.     The statute of limitations is not subject to equitable tolling**

Plaintiff contends that the 28 U.S.C. § 2401(a) limitations period should be equitably tolled, arguing that Federal Respondents failed to provide Plaintiff, or the public, with notice that they approved the subject lease assignment and drilling permits ( Dkt.# 17, ¶¶ 69, 79, 89, 98).

The doctrine of equitable tolling "pauses the running of . . . a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Lorenzo v. Montoya Alvarez*, 34 S. Ct. 1224, 1231-32 (2014). The Supreme Court has adopted a rebuttable presumption that federal status of limitation requiring that suits be filed in court by a certain time—including those applicable to suits against the government—are subject to equitable tolling. *See*, *e.g.*, *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95-96 (1990).

The Supreme Court has emphasized, however, that it "do[es] not apply equitable tolling as a matter of some independent authority to reconsider the fairness of legislative judgments balancing the needs for relief and repose." *Lorenzo*, 134 S. Ct. at 1236. Rather, "whether equitable tolling is available is fundamentally a question of statutory intent." *Id.* at 1232. The presumption in favor of tolling may therefore be rebutted "by demonstrating Congress's intent to the contrary."

Equitable tolling is unavailable if the statutory time limit is a "jurisdictional" restriction on a court's power to adjudicate the case. *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133-34 (2008). A jurisdictional limit is "more absolute" than other limits; it "require[s] a court to decide a timeliness questions despite a [party's] waiver" and "forbid[s] a court to consider whether certain equitable considerations warrant extending a limitations period." *Id.* Jurisdictional treatment is appropriate where the statute seeks "to achieve a broader system-

related goal" such as "limiting the scope of a governmental waiver of sovereign immunity." *Id.* at 133.

A strong indication that a limitations period is jurisdictional is "[w]hen 'a long line of this Court's decisions left undisturbed by Congress' has treated a similar requirement as 'jurisdictional'" because the Supreme Court will "presume that Congress intended to follow that course." *Henderson v. Shinseki*, 131 S. Ct. 1197, 1203 (2011) (citation omitted). Relevant here, the Supreme Court has held that the statute of limitations applicable to Tucker Act claims, 28 U.S.C. § 2501, is jurisdictional. *John R. Sand*, 552 U.S. at 133-34. The statute of limitations in section 2501, like section 2401, provides that a claim "shall be barred" unless filed within six years of the time it first accrues. *Compare* 28 U.S.C. § 2510 *with* 28 U.S.C. § 2401(a).

Sections 2401(a) and 2501 must operate in identical fashion due to the concurrent jurisdiction of the district courts and Court of Federal Claims over substantively similar claims. "For contract cases, the Little Tucker Act gives the district courts jurisdiction, concurrent with the Court of Federal Claims, if the amount sought is less than $10,000." *Id.* Given that section 2501 is jurisdictional, *John R. Sand*, 552 U.S. at 134, so too section 2401(a) must also be jurisdictional. *United States v. Sherwood*, 312 U.S. 584, 591 (1941) (the jurisdiction granted to the district courts in the Tucker Act was meant to be "as restricted as is that of the Court of Claims."); *Saffron v. Dep't of the Navy*, 561 F.2d 938, 944 (D.C. Cir. 1977) ("Save only for a district-court ceiling in terms of amount involved, jurisdiction is the same and the six-year limitation on district-court suits coincides exactly with the limitation statutorily imposed upon litigation instituted in the Court of Claims.").

To hold otherwise would result in different rules applying to the same substantive claims depending on venue. *Sherwood*, 312 U.S. at 591 (acknowledging "the embarrassments which

9

would attend the defense of suits brought against the Government if the jurisdiction of district courts were not deemed to be as restricted as is that of the Court of Claims."). It would also "upset the congruity" between the two courts "for which Congress ever so recently has striven." *Saffron*, 561 F.2d at 946. Finally, it would disregard, if not effectively overrule, the Supreme Court's ruling in *John R. Sand* precluding equitable tolling for Little Tucker Act claims filed beyond the six-year time limit in the Court of Claims.

Plaintiff cites to three cases, *WildEarth Guardians v. Dep't of Justice*, 181 F. Supp. 3d 651, 670 (D. Ariz. 2015); *Strich v. United States*, 793 F. Supp. 2d 1238, 1245-46 (D. Colo. 2011), and *San Luis Valley Ecosystem Council v. Bureau of Land Mgmt.*, No. 14-CV-690-RM, 2015 WL 3826644 (June 19, 2015 D. Colo.) for support that section 2401(a) may be subject to equitable tolling. These decisions are not binding on this Court. Two of these decisions, *WildEarth Guardians* and *San Luis Ecosystem*, provide no analysis to support their holding, while *Strich* relies upon an indication of how the Tenth Circuit would address the issue based on an opinion where the Tenth Circuit passed on the issue *sub silento*. *Strich*, 793 F. Supp. 2d at 1246 (citing *Urabazo v. United States*, No. 91– 6028, 947 F.2d 955, 1991 WL 213406, at *5 (10th Cir. Oct. 21, 1991), *cert. denied,* 505 U.S. 1223 (1992). This Court instead reaches the same conclusion as other courts and finds that section 2401(a) is jurisdictional, *Ctr. for Biological Diversity v. Hamilton*, 453 F.3d 1331, 1334 (11th Cir. 2006) (per curiam) ("Unlike an ordinary statute of limitations, § 2401(a) is a jurisdictional condition attached to the government's waiver of sovereign immunity, and as such must be strictly construed.") (quoting *Spannaus v. Dep't of Justice*, 824 F.2d 52, 55 (D.C. Cir. 1977) and *Sisseton-Wahpeton Oyate of Lake Traverse Reservation v. U.S. Army Corps of Eng'rs*, 124 F. Supp. 3d 958, 969-70 (D. S.D.

2015) (declining to reconsider decision that section 2401(a) is jurisdictional and not subject to equitable tolling), and accordingly not subject to equitable tolling.

### 3. Plaintiff has not met his burden of showing that equitable tolling should apply under the facts of this case

However, to the extent that equitable tolling is available to Plaintiff to extend the limitations period of 28 U.S.C. § 2401(a), the Court finds that tolling is not appropriate in this case. A plaintiff may be entitled to equitable tolling only "when the defendant's conduct rises to the level of active deception; where a plaintiff has been lulled into inaction by a defendant, and likewise, if a plaintiff is actively misled or has in some extraordinary way been prevented from asserting his or her rights." *United States v. Clymore*, 245 F.3d 1195, 1199 (10th Cir. 2001) (citation omitted) (analyzing the availability of equitable tolling in forfeiture actions under 19 U.S.C. § 1621). Equitable tolling is only appropriate when a plaintiff "diligently pursues his claim." *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000), *cert. denied*, 531 U.S. 1194 (2001) (regarding the tolling of the limitations period of 2244(d) concerning an application for a writ for habeas corpus). However, equitable tolling "is not available to a tardy plaintiff who, notwithstanding the alleged concealment, had actual [] or constructive knowledge of the facts constituting his claim for relief." *Thomas v. Sec'y of the Army*, No. 96-6182, 1997 U.S. App. LEXIS 68, at *3 (10th Cir. Jan. 2, 1997) (unpublished opinion) (citation omitted); *see also Urabazo*, 1991 U.S. App. LEXIS 26074, at *4. Plaintiff alleges that his claims should be equitably tolled because he had no notice of the approval of leases or drilling permits which was the foundation of a scheme to mislead him.

The Court finds that Plaintiff alleges no facts that indicate that he has taken any steps to diligently pursue his rights, nor did he or his predecessors-in-interest file any pleading during the

applicable statutory period. Plaintiff's entitlement to equitable tolling relies on his allegations that the BIA concealed from Plaintiff and the public its approval of leases and permits without performing site-specific environmental analysis and intentionally misled Plaintiff to believe it had complied with NEPA in approving the subject lease and permits by failing to provide him or his predecessors-in-interest with notice of their approval (Dkt.# 17 at ¶¶ 57, 69, 70). The Court finds that Plaintiff has not pled any facts demonstrating that he or his predecessors-in-interest were actively misled from pursuing their rights. The crux of Plaintiff's argument is his interpretation of excerpts from draft work papers of the U.S. Department of the Interior, Office of the Inspector General ("OIG"). Doc. No. 17 at ¶¶ 53-54, 57-59.[3] The Court finds that, contrary to Plaintiff's assertions, none of the statements in the OIG work papers support a claim that the BIA concealed, or attempted to conceal, its actions in approving leases and permits, nor did the OIG make any such finding.[4]

The Court also finds Plaintiff's allegation that the BIA intentionally misled him similarly unavailing. Doc. No. 17 at ¶¶ 48, 56. Fatal to Plaintiff's assertion is the fact that the BIA is not obligated to notify surface owners when lease or drilling permits are approved. *See generally*, 25 C.F.R. Part 226. Ultimately, Plaintiff's allegations of concealment are immaterial because the Court finds that Plaintiff and his predecessors-in-interest had actual knowledge of the facts constituting his claim for relief. The record shows that the Plaintiff and his predecessors-in-interest knew, or reasonably should have known, of the existence of his causes of action at the

---

[3] The work papers were created by the OIG during its evaluation of the Osage Agency in 2013. In October 2014, the OIG published a report regarding the Osage Agency's management of the oil and gas program, CR-EV-BIA-0002-2013.

[4] The Court denies Plaintiff's request for discovery on his equitable tolling claim finding that OIG draft work papers do not support a claim that the BIA concealed, or attempted to conceal, its actions in approving the Chance Lease assignment and the drilling permits for Wells No. 3 and 4.

time of their accrual or shortly thereafter.  Accordingly, since Plaintiff failed to diligently pursue his rights during the statutory period, Plaintiff failed to allege sufficient facts supporting concealment by Defendants, and Plaintiff had actual knowledge of his claims at the time they accrued, the Court finds that his claims are not subject to equitable tolling.

The Court also finds that Plaintiff's claims are still untimely under the class action tolling doctrine.  The doctrine of class action tolling protects class members from being forced to file individual suits in order to preserve their claims and seeks to promote the efficiency of Fed. R. Civ. P. 23 for cases where a class action is found superior to other available methods for the fair and efficient adjudication of the controversy.  *Am. Pipe Constr. Co. v. Utah*, 414 U.S. 538, 551-53 (1974) (quotation omitted).  Plaintiff asserts that the filing of *Donelson v. United States*, Case No. 4:14-CV-316-JHP-FHM (N.D. Okla. 2014) tolls the statute of limitations for his claims during the pendency of the *Donelson* litigation, which was dismissed for lack of subject matter jurisdiction on March 31, 2016 (Doc. No. 229).   The class action tolling doctrine, however, cannot revive long stale claims.  This lawsuit was filed in 2016.  *Donelson* was filed in 2014. The approvals Plaintiff challenges were made in 1990 and 1991.  Plaintiff had until 1996 and 1997, respectively, to file a lawsuit.  *Donelson* cannot revive claims that already expired and the Court finds that Plaintiff fails to establish equitable tolling under the class action doctrine.

For the foregoing reasons, the Court finds that Plaintiff's claims are barred by the six-year statute of limitations set forth in 28 U.S.C. § 2401(a) and are not saved by equitable tolling. Therefore, Plaintiff's claims against Federal Defendants should be dismissed for lack of subject jurisdiction.

    **B.**    **Plaintiff fails to establish a waiver of sovereign immunity**

It is well settled that Plaintiff can sue the Federal Defendants only to the extent they waived their sovereign immunity. *See United States v. Sherwood*, 312 U.S. 584, 586 (1941). Here, Federal Defendants argue that Plaintiff's claims do not fall within such a waiver of sovereign immunity. Plaintiff invokes federal jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1346 (United States as defendant), 28 U.S.C. § 2201 et seq. (Declaratory Judgment Act), 5 U.S.C. § 551, *et seq.* (APA) and 42 U.S.C. § 4321, *et seq.* (NEPA). Doc. No. 17, ¶¶ 41-42. As the Federal Defendants correctly state, and Plaintiff does not dispute, the United States' sovereign immunity is not waived under the general jurisdiction statutes, 28 U.S.C. § 1331 and 28 U.S.C. § 1346. *See High Country Citizens Alliance v. Clarke*, 454 F.3d 1177, 1181 (10th Cir. 2006) (noting § 1331 "does not independently waive the Government's sovereign immunity" but "will only confer subject matter jurisdiction where some other statute provides such a waiver."). Moreover, the Declaratory Judgment Act, 28 U.S.C. § 2201, does not "itself confer jurisdiction on a federal court where none otherwise exists." *Wyoming v. United States*, 279 F.3d 1214, 1225 (10th Cir. 2002) (citation omitted).

Therefore, Plaintiff must demonstrate that jurisdiction is proper under the APA and NEPA, based on Plaintiff's challenge to "final agency action by the BIA." Doc. No. 17, ¶ 42. The APA serves as a limited waiver of sovereign immunity but does not itself grant subject matter jurisdiction to review agency actions. *City of Albuquerque v. United States Dep't of the Interior*, 379 F.3d 901, 906-07 (10th Cir. 2004). Rather, Plaintiff must identify an agency action that was "arbitrary, capricious, an abuse of discretion," or otherwise contrary to another federal statute other than the APA itself. 5 U.S.C. § 706; *United Tribe of Shawnee Indians v. United States*, 253 F.3d 543, 550 (10th Cir. 2001); 5 U.S.C. § 702 ("A person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the

meaning of a relevant statute, is entitled to judicial review thereof."). When, as here, review is sought under the general review provisions of the APA, the "agency action" in question must be "final agency action." 5 U.S.C. § 704; *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 882 (1990). *See* 5 U.S.C. § 551(13) (defining "agency action" to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act.").

Plaintiff contends that the BIA's approval of the Chance Lease assignment and drilling permits for Wells No. 3 and 4, without satisfying the requirements of NEPA and its implementing regulations, constitutes final agency action. Doc. No. 17, ¶¶ 84, 86, 91, 103. Federal Defendants argue that their sovereign immunity is not waived for several reasons. The Court agrees with Federal Defendants and, as discussed in detail in the following section, Plaintiff has not exhausted administrative remedies as required, and therefore, the challenged agency action is not "final" for purposes of APA jurisdiction. Since Plaintiff fails to identify any statue other than the APA that provides a cause of action against Federal Defendants, and there has been no final agency action, the APA does not waive sovereign immunity for Plaintiff's claims.

**C.     Plaintiff failed to exhaust administrative remedies as required by Interior regulations, and therefore, judicial review is not available under the APA**

Federal Defendants argue that Plaintiff has failed to identify a final agency action reviewable under the APA because Plaintiff failed to exhaust his administrative remedies. Doc. No. 25 at 14. Plaintiff does not allege that he appealed the Superintendent's decisions, but instead argues that he was not required to exhaust administrative remedies because the Superintendent's approvals of the lease assignment and drilling permits are final agency actions not subject to administrative appeal. Doc. No. 36 at 16. Under the APA, final agency actions for which there are no other adequate remedies in a court are subject to judicial review. 5 U.S.C.

15

§ 704. The actions of BIA officials are not final unless administrative remedies have been exhausted. *See* 43 C.F.R. § 4.314; 25 C.F.R. § 2.6; *see also Coosewoon v. Meridian Oil Co.*, 25 F.3d 920, 924-25 (10th Cir. 1994). Under the BIA regulations, any decision or order issued by the Superintendent related to governing the leasing of Osage reservation lands for oil and gas mining may be appealed pursuant to 25 C.F.R. Part 2.[5] *See* 25 C.F.R. § 226.44. The exhaustion requirement "recognizes the notion, grounded in deference to Congress' delegation of authority to coordinate branches of Government, that agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer." *United Tribe of Shawnee Indians v. United States*, 253 F.3d 543, 550 (10th Cir. 2001) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Plaintiff argues that he was not required to exhaust his administrative remedies for two reasons: (1) neither Plaintiff nor his predecessors-in-interest received a notice of appeal rights; and (2) the approvals were effectively decisions of the Assistant Secretary, which are final unless the decision provides otherwise. Doc. No. 36 at 17-18.

Plaintiff alleges that the BIA failed to notify him or his predecessors-in-interest when the Superintendent approved the lease assignment and drilling permits. However, even if the BIA failed to give any notice of the Superintendent's decisions, Plaintiff is not excused from exhausting his administrative remedies. A BIA official making a decision "shall give all interested parties known to the decision maker written notice of the decision by personal delivery or mail." 25 C.F.R. § 2.7(a). Written notice must include a statement that the decision may be appealed and detail the appeal procedures. *Id.* § 2.7©. "Failure to give such notice shall not affect the validity of the decision or action but the time to file a notice of appeal regarding

---

[5] The Superintendent's approval of leases and drilling permits were also appealable when the initial lease was approved, *see* 25 C.F.R. § 183.44 (Feb. 17, 1978), and when the drilling permits were approved, *see* 25 C.F.R. § 226.44 (Aug. 14, 1990).

such a decision shall not begin to run until notice has been given." *Id.* § 2.7(b). Thus, if the BIA fails to properly notify an interested party, the time to appeal the decision is extended, but Plaintiff's obligation to pursue an administrative appeal before filing suit in federal court is unchanged. *See Begay v. Pub. Serv. Co. of N.M.*, 710 F. Supp. 2d 1161, 1205 (D.N.M. 2010) ("Failure of the BIA to provide a notice does not necessarily cancel the administrative-remedy process. Instead, failure of the agency to give notice of the initial agency action simply extends the time in which the plaintiff can appeal the action.") (citing *Cheyenne-Arapaho Tribes Okla. v. United States*, 966 F.2d 583, 588 (10th Cir. 1992)); *Nulankeyutmonen Nkihtaqmikon v. Impson*, 573 F. Supp. 2d 311, 321-22 (D. Me. 2008) ("Although § 2.7 can extend the time limits for filing a notice of appeal, it does not eliminate the obligation to exhaust administrative remedies by proceedings with an appeal once notice is given."). Therefore, even if Plaintiff received no notice from the BIA regarding the Superintendent's approvals of the lease assignment and drilling permits, Plaintiff is still obligated to exhaust his administrative remedies. *Lenker v. Haugrud*, No. 16-CV-0532-CVE-PJC, 2017 WL 539599, *3 (Feb. 9, 2017 N.D. Okla.).

Plaintiff also argues that the Superintendent's decisions were final agency actions. Decisions made by the Assistant Secretary are final and immediately effective unless the Assistant Secretary provides otherwise in the decision. 25 C.F.R. § 2.6©. Plaintiff argues that because the Superintendent approved the lease assignment and drilling permits pursuant to authority delegated to him by the Assistant Secretary, the Superintendent's approval of the lease assignment and drilling permits were decisions of the Assistant Secretary, and therefore, final agency actions. Doc. No. 36 at 18. Plaintiff's argument is contrary to the plain text of the regulations. Section 2.6© states that decisions made *by* the Assistant Secretary are final, not decisions made *pursuant to* the Assistant Secretary's authority, including those decisions, like

the ones at issue in this case, that were delegated down pursuant to the Assistant Secretary's authority. Further, 25 C.F.R. Part 226, which contains the BIA regulations relating to the leasing of Osage reservation lands for oil and gas mining, explicitly states that "any decision or order *issued by or under the authority* of the Superintendent" is subject to appeal. 25 C.F.R. § 226.44 (emphasis added). Thus, section 226.44 is intended to allow for the appeal of any decision made directly by the Superintendent or by someone acting under the authority of the Superintendent. Plaintiff has not cited any authority, or provided any other reason, for the Court to deviate from the plain language of the BIA regulations. Thus, the decisions of the Superintendent to approve the lease assignment and drilling permits were subject to appeal. Because the Superintendent's decisions were subject to appeal, Plaintiff must exhaust his administrative remedies by fully availing himself of the BIA's appeal procedure before he may bring suit under the APA. *See Osage Producers Assoc. v. Jewell*, 191 F. Supp. 3d 1243, 1252 (N.D. Okla. 2016) ("BIA regulations allow for intra-agency review of all decisions and orders made by the Superintendent . . . and require exhaustion of these procedures as a prerequisite to APA review."); *see also Lenker*, 2016 WL 539599 at *3. Therefore, Plaintiff's claims against Federal Defendants should be dismissed for lack of subject matter jurisdiction.

> **D.      Plaintiff failed to identify any final agency action under the APA with respect his claim regarding all other "unknown" leases and permits approved since January 1, 1970**

Plaintiff's complaint seeks review pursuant to the general review provisions of the APA, and therefore, the "agency action" in questions must be "final agency action." *See Lujan*, 497 U.S. at 882 (citing 5 U.S.C. § 704). In his complaint, Plaintiff asserts that, "[u]pon information and belief, the BIA has approved additional major federal actions authorizing oil and gas related activity on the Subject Property, such as workovers since the date of enactment of NEPA. The

BIA approved such activity without satisfying the BIA's obligations under NEPA, related federal regulations or established public policy, rendering these activities invalid," Doc No. 17 ¶ 60, and seeks declaratory judgment as to these unknown leases, drilling permits, and workover permits, *Id.* at ¶ 92-99. To the extent that Plaintiff challenges the approval of "unknown" leases, drilling and workover permits approved by the Osage Agency since January 1, 1970, he fails to challenge final agency action. Plaintiff has the burden of identifying specific federal conduct and explaining how such conduct constitutes final agency action within the meaning of the APA. *See Lujan*, 497 U.S. at 882; *see also Colo. Farm Bureau Fed'n v. U.S. Forest Serv.*, 220 F.3d 1171, 1173 (10th Cir. 2000) (citing *Catron Cnty. v. U.S. Fish and Wildlife Serv.*, 75 F.3d 1429, 1434 (10th Cir. 1996)). A claim for "unknown" leases and permits fails to satisfy this burden. Since Plaintiff fails to identify a final agency action under the APA with respect to "unknown" leases and permits approved since January 1, 1970, any claims related thereto are dismissed.

## II. Motion of GSE (Doc. No. 21)

GSE seeks dismissal of Plaintiff's complaint for failure to state a claim for which relief may be granted under Fed. R. Civ. P. 12(b)(6). As the Court has previously found, a non-federal defendant is not subject to NEPA requirements, and the state law claims against GSE necessarily depend upon whether the Superintendent of the Osage Agency violated NEPA in approving the concession agreements, leases, and drilling permits. *Donelson v. United States*, No. 14-CV-316-JHP-FHM, 2016 WL 1301169, *5 (Mar. 31, 2016 N.D. Okla.). Accordingly, if Plaintiff's NEPA and APA claims against Federal Defendants fail, Plaintiff's claims against GSE also fail.

As discussed above, Plaintiff's claims against Federal Defendants fail for a number of reasons. There is no independent basis for the Court to exercise jurisdiction over GSE in this case. For this reason, Plaintiff has not stated a claim against GSE. Therefore, Plaintiff's claims against GSE must be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon

which relief may be granted, or alternatively under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. To the extent Plaintiff asks the Court to retain supplemental jurisdiction over the state law claims, the Court declines to do so, having dismissed all claims over which it had original jurisdiction. *See* 28 U.S.C. § 1367(c)(3).

## CONCLUSION

For the reasons set forth above, the Motions to Dismiss (Dkt.#s 21 and 25) are **GRANTED**.

**IT IS SO ORDERED this 18th day of April, 2017.**

_____
James H. Payne
United States District Judge
Northern District of Oklahoma